**JUDGE KARAS**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**05 CV   7237**

--------------------------------------------------------------X

THE SAINT AT LARGE, INC.,

                Plaintiff,

    v.

CANDYSTORE RECORDS, INC.,
DAVID KANE AND JAMES LATZ
PARTNERSHIP, DAVID KANE, and
JAMES LATZ,

                Defendants.

--------------------------------------------------------------X

**Civil Action No.**

**COMPLAINT**



RECEIVED
AUG 1 6 2005
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff The Saint At Large, Inc., by and through by its attorneys Olshan
Grundman Frome Rosenzweig & Wolosky LLP, as and for its complaint in this matter
alleges as follows:

## PARTIES

1. Plaintiff The Saint At Large, Inc. ("The Saint") is a New York
corporation doing business in New York, New York.

2. Upon information and belief, defendant CandyStoreRecords, Inc.
("CandyStore") is a corporation organized and existing under the laws of New York,
doing business in New York, New York, and elsewhere.

3. Upon information and belief, defendant David Kane and James Lutz
Partnership is a New York partnership, having a place of business in Sunnyside, New
York (the "Partnership").

4. Upon information and belief, defendant David Kane is an individual
residing in Sunnyside, New York, is one of the partners of the Partnership, and is one of
the principals of defendant CandyStore.

5. Upon information and belief, defendant James Lutz is an individual residing in Sunnyside, New York, is one of the partners of the Partnership, and is one of the principals of defendant CandyStore.

## JURISDICTION

6. This action arises under the Lanham Trademark Act, 15 U.S.C. § 1051 et seq.

7. This Court has jurisdiction over this matter pursuant to Fed. R. Civ P. 13, and 28 U.S.C. §§ 1331 and 1338. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

## VENUE

8. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events giving rise to The Saint's claims occurred in this district.

## FACTS COMMON TO ALL ALLEGATIONS

History of THE SAINT

9. Opened in 1980 at 105 2nd Avenue in the East Village of New York City, THE SAINT was the largest, most elaborate, and most exclusive gay men's nightclub in the world.

10. Bruce Mailman, the original owner and operator, envisioned the club as a hybrid of a fully-realized planetarium and a live theatrical experience. The objective was to transport dancers to a star-filled galaxy of music, lights and atmosphere that surpassed the jaded crowd's highest expectations.

11. From its opening weekend until it closed its doors in 1988, the club was a phenomenon.

2

467728-3

12. THE SAINT was such a success that some of its annual events,

including "The Black Party," have survived for the past 25 years and are today produced

by plaintiff, the successor-in-interest to the original THE SAINT. THE SAINT's "The

Black Party" has the distinction of being the longest-running "circuit party," a type of gay

dance party held in major cities that combines a specific theme, a DJ, a large venue and

often performing artists, in the world.

13. Plaintiff also produces a number of other THE SAINT events. All of

these events are held in New York City, but are advertised, promoted and attended by

people from throughout the United States.

14. In addition, plaintiff creates and disseminates a number of THE

SAINT items, including t-shirts, dog tags, photographs and posters. Some of these have

become collector's items.

15. Part of the legacy of THE SAINT rests with "The Saint sound," 18+

hours of music that is carefully selected and constructed to act as a catalyst for a

consciousness-raising dance journey that is intended to illicit a physical and emotional

catharsis. Pain-staking attention is paid to every detail of the music in order to satisfy the

high standards of this unique tradition and the discriminating audience.

16. One of plaintiff's objectives regarding The Saint sound today is to

replicate the experience of the original THE SAINT. This involves timing the speed and

style of the music to a set of established criteria, the goal of which is to establish an arc of

sound ranging from musical styles commonly referred to as HI-NRG to Morning Music.

Attendees at the various events produced by plaintiff are well aware of this arc, and often

plan the time of their attendance at the events to coincide with the type of music to be played during a particular time.

17. The Saint sound is a distinction recognized by many dance music fans and has been referred to in publications such as the music industry's trade magazine, Billboard, as well as in a recently released book.

18. Well-known DJ's who have a long-standing relationship with THE SAINT and with plaintiff are chosen to play these prestigious events and paid high fees for their unique talent. Often, these artists have record contracts, but they are contractually restricted from using any of plaintiff's registered trademarks to commercially endorse their own records or nightclub engagements.

19. Likewise, plaintiff is restricted from licensing the musical compilations of the music played at the parties without the express written consent of the DJ's. Such permission has been contractually agreed to for purposes of plaintiff's promotional website, which features a streaming webcast of selected parties entitled LIVE FROM THE SAINT. A different party from its digitized archive is posted on plaintiff's web site on a monthly basis.

20. Plaintiff owes much of its success, continuing an uninterrupted 25-year run begun by THE SAINT, to maintaining its integrity as a state-of-the-art, but decidedly "underground," experience using the same distinctive formula on which its reputation was built.

21. Plaintiff has strategically cultivated its unique image and position in an extremely competitive marketplace. It is selective about mainstream press and about licensing deals.

4

467728-3

22. While a specific, limited advertising campaign is created for a select gay targeted market, to a large extent, THE SAINT continues to be based on its strong word-of-mouth reputation and highly cultivated private mailing list. As a result, it is a much beloved and very valuable asset that has been controlled by the same family since its inception.

Plaintiff's Registration and Ownership
Of THE SAINT Trademarks

23. One of plaintiff's predecessors-in-interest obtained a trademark registration for the mark THE SAINT for nightclub services on August 13, 1996, Registration No. 1,993,384. This trademark registration became incontestable on June 26, 2002 and was assigned to plaintiff on December 23, 2003. This registration remains valid and subsisting. A true and correct copy of a printout from the USPTO evidencing this registration is annexed hereto as Exhibit A.

24. One of plaintiff's predecessors-in-interest also obtained a trademark registration for the mark THE SAINT AT LARGE for nightclub services on July 23, 1996, Registration No. 1988653. This trademark registration became incontestable on June 26, 2002 and was assigned to plaintiff on December 23, 2003. This registration remains valid and subsisting. A true and correct copy of a printout from the USPTO reflecting this registration is annexed hereto as Exhibit B. Hereinafter the registered and incontestable THE SAINT and THE SAINT AT LARGE trademarks shall collectively be referred to as "THE SAINT Trademarks."

25. Plaintiff has used the incontestable THE SAINT Trademarks to identify its goods and services and to distinguish them from those of others.

467728-3

26. Goods and/or services sold under THE SAINT Trademarks have been promoted and marketed throughout the United States and elsewhere, and have become known to the purchasing public throughout the United States as representing products of the highest quality.

27. By virtue of the wide renown acquired by THE SAINT Trademarks, coupled with the national promotion of events under THE SAINT Trademarks, THE SAINT Trademarks have developed a secondary meaning and significance in the minds of the trade and the purchasing public and have become famous. Goods and services sold under such marks are immediately identified by the purchasing public.

Defendants' Infringing Activities

28. Defendant Partnership, under the control of Kane and Latz, has applied to register the trademark THE MUSIC OF THE SAINT for a CD compilation of dance music.

29. Defendant CandyStore, under the ownership and control of defendants Kane and Latz, has released and offered for sale in this District and elsewhere, and is promoting as THE MUSIC OF THE SAINT, a dance music compilation project in a 15-volume CD series, chronicling the music played at THE SAINT from 1980-1988, the first 3 volumes of which are presently available for sale (the "Infringing Product"). A true and correct printout of pages from the CandyStore web site are annexed hereto as Exhibit C.

30. Defendants' have infringed plaintiff's marks by various acts, including offering for sale, advertising for sale, manufacturing, and displaying goods in interstate commerce under THE MUSIC OF THE SAINT mark with the intent to confuse the

6

467728-3

public as to the source or sponsorship of the unauthorized use of plaintiff's THE SAINT Trademarks. Such use of THE SAINT Trademarks by defendants is without permission or authority of plaintiff.

31. The above-described acts of defendants constitute trademark infringement and unfair competition in violation of plaintiff's rights in THE SAINT Trademarks pursuant to the Lanham Act, 15 U.S.C. § 1051 et seq, including, without limitation, §43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

32. Defendants threaten to continue to do the acts complained of herein, and unless restrained and enjoined, will continue to do so, all to plaintiff's irreparable damage. It would be difficult to ascertain the amount of compensation which could afford plaintiff adequate relief for such acts, and a multiplicity of judicial proceedings would be required. Plaintiff's remedy at law is not adequate to fully compensate plaintiff for the injuries it has suffered and which are threatened.

## COUNT I – FEDERAL TRADEMARK INFRINGEMENT

33. Plaintiff hereby realleges and incorporates by reference the allegations of paragraphs 1 through 32 of the Complaint.

34. Defendants, without the consent of plaintiff, had used and will continue to use in commerce marks confusingly similar to plaintiff's registered and incontestable THE SAINT Trademark on and in connection with the sale, offering for sale, distribution and advertising of goods and services, on or in connection with which such intended use is likely to cause confusion, or to cause mistake, or to deceive.

35. The aforesaid acts of defendants constitute trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

7

467728-3

## COUNT 11 – FEDERAL UNFAIR COMPETITION

36. Plaintiff hereby realleges and incorporates by reference the allegations of paragraphs 1 through 35 of the Complaint.

37. The aforesaid acts of defendants constitute use in commerce of words, terms, names, symbols, and devices, and combinations thereof; false designation of origin; false and misleading descriptions of fact that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of defendants with plaintiff, or as to the origin, sponsorship, or approval of defendants' services, goods, or other commercial activities by plaintiff.

38. The aforesaid acts of defendants constitute use in commerce of words, terms, names, symbols, and devices, and combinations thereof; false designation of origin; false and misleading descriptions of fact; and false and misleading representations of fact in commercial advertising, or promotion that misrepresents the nature, characteristics, or qualities of defendants' services, goods, or other commercial activities.

39. The aforesaid acts of defendants constitute false designation of origin and false and misleading descriptions and representations in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT III – FEDERAL DILUTION

40. Plaintiff hereby realleges and incorporates by reference the allegations of paragraphs 1 through 39 of the Complaint.

41. The aforesaid acts of defendants constitute false commercial use beginning after THE SAINT Trademarks became famous, which will dilute the

467728-3

distinctive quality of THE SAINT Trademarks in violation of Section 43(c) of the

Lanham Act, 15. U.S.C. § 1125(c).

42. The aforesaid acts of defendants were willfully intended to trade on plaintiff's reputation and to dilute the famous THE SAINT Trademarks.

## COUNT IV – DECEPTIVE ACTS AND PRACTICES UNDER NEW YORK LAW

43. Plaintiff hereby realleges and incorporates by reference the allegations of paragraphs 1 through 42 of the Complaint.

44. The aforesaid acts of defendants constitute deceptive acts or practices in the conduct of business, trade, or commerce, or in the furnishing of any service in New York State in violation of Section 349(h) of the New York General Business Law.

45. The aforesaid acts of defendants have caused and are causing consumer injury and harm to the public interest.

## COUNT V – FALSE ADVERTISING UNDER NEW YORK LAW

46. Plaintiff hereby realleges and incorporates by reference the allegations of paragraphs 1 through 45 of the Complaint.

47. Defendants misleadingly advertised goods and services, in the defendants made statements, used words, designs, devices, sounds, or combinations thereof that failed to reveal facts material in light of such representations with respect to the subject goods and services, or under such conditions as are customary or usual.

48. The aforesaid acts of defendants constitute false advertising in the conduct of business, trade, or commerce, or in the furnishing of any good or service in New York State in violation of Section 350-e(3) of the New York General Business Law.

9

467728-3

### COUNT V- INJURY TO BUSINESS REPUTATION AND DILUTION UNDER NEW YORK LAW

49. Plaintiff hereby realleges and incorporates by reference the allegations of paragraphs 1 through 48 of the Complaint.

50. The aforementioned acts of defendants constitute use beginning after THE SAINT Trademarks had become famous and will dilute the distinctive quality of THE SAINT Trademarks.

51. The aforesaid acts of defendants are likely to injure the business reputation of plaintiff and to dilute the distinctive quality of plaintiff's trademarks in violation of Section 360-[l] of the New York General Business Law.

### COUNT VII – COMMON LAW TRADEMARK INFRINGEMENT

52. Plaintiff hereby realleges and incorporates by reference the allegations of Paragraphs 1 through 51 of this Complaint.

53. The aforesaid acts of defendants constitute use that it is likely to cause confusion as to the source of defendants' goods.

54. The aforesaid acts of defendants constitute trademark infringement in violation of common law.

### COUNT VIII – COMMON LAW UNFAIR COMPETITION

55. Plaintiff hereby realleges and incorporates by reference the allegations of Paragraphs 1 through 54 of this Complaint.

56. The aforesaid acts of defendants constitute use that is likely to cause confusion as to the source of defendants' products.

57. The aforementioned acts of defendants misappropriate the equity and goodwill of plaintiff and constitute unfair competition in violation of common law.

10

467728-3

## RELIEF REQUESTED

1.      That a permanent injunction be issued enjoining the defendants and their agents, servants, employees and attorneys and those persons in active concert or participating with them:

   A.      From making any use of THE SAINT or THE SAINT AT LARGE marks or any mark confusingly similar thereto in connection with the sale of any goods or the rendering of any services;

   B.      From using any logo, trade name, trademark or service mark which may be calculated to falsely represent or which has the effect of falsely representing that the services or products of the defendants are sponsored by, authorized by, or in any way associated with plaintiff;

   C.      From infringing THE SAINT or THE SAINT AT LARGE marks;

   D.      From making, distributing, selling or offering for sale the Infringing Products; and

   E.      From otherwise unfairly competing with plaintiff.

2.      That the defendants be ordered to assign all pending trademark applications and/or registrations which incorporate any of THE SAINT trademarks to plaintiff and to deliver up to plaintiff for destruction all labels, stickers, signs, prints, packages, wrapper, receptacles, advertisements and other written or printed material in its possession, custody or control which bear THE SAINT or THE SAINT AT LARGE marks and/or the Infringing Products, and that the defendants be ordered to deliver up to plaintiff for destruction all plates, molds, matrices and other means of making the aforesaid materials;

11

467728-3

3.      That the defendants be directed to file with the Court and serve upon plaintiff, within thirty (30) days after service of the injunction upon the defendants, a report in writing, under oath, setting forth in detail the manner and form which the defendants have complied with the aforesaid injunctive relief;

4.      That this Court enter a judgment requiring the defendants to pay to plaintiff such actual damages in an amount to be determined at trial but believed to be in excess of Five Million ($5,000,000) Dollars as the plaintiff has sustained in consequence of the acts of the defendants complained of herein and/or to account to plaintiff for all profits resulting from the defendants' infringing activities, pursuant to 15 U.S.C.§ 1117;

5.      That this Court enter a judgment enhancing such award of damages and profits pursuant to 15 U.S.C. § 1117;

6.      That plaintiff have and recover from the defendants the costs of this Action and reasonable counsel fees; and

7.      That plaintiff have all other and further relief as the Court may deem just and proper under the circumstances.

Dated: New York, New York
       August 15, 2005

OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP

By:_____
Randy M. Friedberg (RF-8645)
Park Avenue Tower
65 East 55 Street
New York, New York 10022
(212) 451-2321 telephone
(212) 451-2222 facsimile

467728-3